Good morning, ladies and gentlemen. Our first case for argument this morning is Joliet v. New West. Mr. Tetzlaff. Good morning, Your Honors. I'm Theodore Tetzlaff. On behalf of New West, New Bluff, I'll collectively refer to them as New West hereafter. To defend their claim on the reserves, Joliet and HUD successively rely on their settlement agreement, on the contention that the reserves are excess funds, and the continuation of the HAP contract. New West was not a party to that settlement agreement. It's the start, not the end, of the determination of who owns the reserves. As we explain and try to go out in some detail in our brief... The first question, at least for me, is where did the money in the reserve come from? Did it come from New West? The money in the reserves came from New West, paid to it as part of the rent that was paid to New West by HUD as a subsidy. In other words, it came from the Department of Housing and Urban Development. Yes, pursuant to contracts. It was paid as subsidized rent, and part of that rent was then deposited by New West into the reserve account as the security agreement and the documents required it to do. We submit that a careful reading of the regulations relating to project funds, excess funds, and reserves make a clear distinction among the three, and that excess funds are not the same as the replacement reserves. Are the replacement reserves, do they function like collateral? They are collateral pursuant to a security agreement between HUD and New West that was part of the mortgage document. They're collateral, and they are collateral for what may be anticipated future repair and replacement needs of the project. When repairs or replacement are needed, it is to those reserves that they can be looked, that you can look to. The regulations also provide that in the event of a new owner, in the event the ownership of the project changes, which it has here, that the new owner is obligated to create the reserve account for the replacement and repair of the property. The district court's order on this issue didn't really say who owns the reserves, which I found curious. That's correct. The district court concluded that the reserves, quote, follow the property, and to do so, he looked to the source of the funds that went into the reserves and the so-called control of the reserves. The fact that the money that was paid into the reserves by New West came originally from HUD, we suggest and submit is irrelevant. It was New West's income and New West's obligation to fund those reserves, and they did so. You were taxed on it. Pardon me? Yes, we were taxed on it. Likewise, we submit the control is irrelevant. Control, of course, HUD controlled the reserves. They were necessary in order to assure that the project could be maintained properly, so there was control, but control is not dispositive of ownership. To look to ownership, you have to look to the closing documents among the parties, the mortgage, the security agreement, the rider to the regulatory agreements. You also should look to the HUD opinion letter, to the HUD handbook, and all the other pertinent documents. The trial court did not do so. There is no reference in any of the trial court's orders to the HUD handbook, the HUD opinion, or those closing documents, the regulatory agreement, the rider to the regulatory agreement. That significantly called the rider to the regulatory agreement, which was part of the closing documents, dictated that New West carry the reserves on its books as a restricted asset. Now, what could be more indicative of whose they are than that directive? Is the first time that you were aware that Joliet was seeking these funds when it moved to have them transferred, or was there some dispute about the funds prior to that? This matter originally came up, Your Honor, when Joliet and HUD entered into a settlement agreement so that HUD could get out of the underlying litigation. One provision of that settlement agreement, and it was extensive, provided that HUD and Joliet agreed that the reserves would go to Joliet. We were not a party. New West was not a party to that agreement. New West objected at the trial court level when that settlement agreement was proposed. The trial court accepted it. That didn't make it binding on New West. And it was acknowledged at that time that this would be an issue that would have to be dealt with later. Well, actually, if the intent was to take the reserves as part of the condemnation proceedings, shouldn't the reserves have been part of that complaint? They should have been. And valued as a part of the value of the property that was being condemned? If it was one of the sticks in the bundle of property rights that was being condemned, the property interests that was being condemned? They were not pled as part of the condemnation complaint. The judge conceded that they were not. In one of his orders, he didn't concede. He stated the reserves were never part of the condemnation case. And not only were they not condemned in the condemnation complaint, but when we got to the point of the valuation of the property, the judge excluded any evidence of the value of the property as a Section 8 housing property. Now, had it been so valued, the HAP contracts would have come in and any reserves would have come in. But it was only a fee-simple interest that the judge dictated be valued in the condemnation case. Well, that's because the plan is to demolish this project and put up a community center, as I understand it, from the settlement agreement. Isn't that right? Well, that was the plan. I can tell you that the project is still standing and people are living in it and doing quite well. But that was part of the plan. Right. The original intent was not to operate this as Section 8 housing. It was to disperse the tenants to housing vouchers where they could rent elsewhere, as I understand the chronology here. Yes. And, of course, if that had been done, there'd be no need for the reserves because you don't have to keep a reserve. And that was the whole rationale for valuing the property as it was, just as a fee-simple interest, rather than as a going Section 8 housing concern. Yes. Yes. And it was so pled in the condemnation complaint and so tried and so valued by the jury. And none of these documents that I've referred to or the policies I've referred to were even acknowledged by or significantly referred to in any of the judges' orders. The section of the regulations that Judge Norgal relied on, he relied on source and control and cited the Reg. 880-602-82. We discussed the application of that regulation extensively in our briefs, but that regulation does not determine ownership of the reserves. You have to look carefully at all of the regs that distinguish between excess funds, project funds, and reserves, and their excess funds are not reserves. They are created when the reserves are fully funded. So, by definition, these cannot be excess funds that could be returned to HUD. And, significantly, HUD never made any determination, as it would have had to do, that any part of the reserves were excess funds. I mentioned the security agreement for which the reserves were defined as collateral. Why would HUD accept something it owned as collateral? How could that be security for it? The closing documents between HUD and New West, when this new mortgage was put in place, contemplate the condemnation. So, they were entered into after this condemnation case was already underway. But nowhere do they give HUD the right to the collateral upon repayment of the mortgage or the conclusion of the condemnation, including the reserves. Does any of the regulations or opinions show what happens if a subsidized building burns down? Forget about condemnation. The building just goes up in smoke. There's this fund. What happens to it? The owner of the, well, I would submit in that event that whatever... I'm not asking what you are reasoning out. I'm asking whether a regulation or opinion letter or some other legally binding document tells us what happens. I have not reviewed the documents with that contingency in mind, Your Honor. There must be other ways other than condemnation and potential raising of a project in which the project disappears. And one would really like to know what happens to this fund when that happens. The fund is created pursuant to the mortgage. I know how it's created, right? But it can be created with a right to follow the project. It can be created with an ownership interest in the current owner, or it can be created with an ownership interest in the Department of Housing and Urban Development. And presumably, either contract or regulations will tell us which of these it is. It's not something that can be reasoned a priori. The contracts say that the owner is New West and New Bluff, that HUD is the lender, and in this case, HUD also is the subsidizer of the rent. Nothing would relieve, of the nature that Your Honor refers to, would relieve New West and New Bluff of the obligation to repay the mortgage. So were a fire to occur or an earthquake or something of that nature, the mortgage remains in place and it has to be repaid. I'm thinking, I'm going to ask the federal lawyer what is the implication of the fact that the money can be used to repay the mortgage. But my concern is what happens, the project is presumably insured, the insurance will repay the mortgage holder. Then what happens to the reserve fund? And I couldn't find an answer in the regulations. Well, I think you have to look to the closing documents, not the regulations. And I think they're quite clear that the obligation to repay the mortgage is New West and upon repayment of the mortgage, the security agreement provides that the collateral is released to New West and the reserves are the collateral under the security agreement. I mentioned, HUD's handbook I think is instructive. It states that the funds in the reserve accounts are the mortgager's money. Likewise, this HUD legal opinion is helpful. It advises that the reserves return to the property owner upon the termination of the mortgage. But HUD and Joliet have avoided or diminished both the handbook and the legal opinion before the trial court and now. Instead, HUD contends that even though the mortgage is paid off, the HAP contract is not terminated and somehow continues to obligate New West New Bluff. But that is not the case. HUD specifically terminated the HAP contract by notice to New West. Terminated the what contract? The HAP contract. Could you say that in English, please? The Housing Assistance Program. We are not specialists in the acronyms that you may have been using for years. We're generalists. If you could use real English words, it would help. What I've referred to as the HAP contract. Yeah, but don't refer to them that way. All right. That is the contract by which HUD provides the subsidy to New West. And it is that housing assistant plan contract that HUD contends now in its response brief continues to obligate New West to maintain the reserves. However, contrary to what HUD has stated, HUD terminated that contract by notice to New West on September 30th, 2017. Similarly, HUD claims that states that HUD makes, that New West makes no effort to show that the project at issue in the 2001 legal opinion was similar to this one. And, or whether in that opinion, the project was subject to the type of continuing contracts. Mr. Walters. May it please the court, Tice Walters for the U.S. Department of Housing and Urban Development, appearing as amicus in support of the city. Okay. So what's the answer to my question? I'm not certain if there are regulations dealing with something like a catastrophic loss of the property, Your Honor. Obviously, the first line would be that the reserves themselves would need to be spent to try to rehabilitate the property. Just take my hypothetical. The building is covered by insurance. It burns down. The insurance pays off the mortgage. What happens to the money, right? There are an awful lot of these projects and subsidized buildings. One of them must have burned down. What happened? And I'm not certain, Your Honor. Again, if, I believe the HAP, we'll call it the HAP contracts, the Section 8 contracts, the Section 8 subsidy contracts. Would you please not use initialisms that the judges don't know? Exactly, Your Honor. I'll refer to them as the Section 8 contracts, if that's convenient. But those can be found in our supplemental appendix. And if those contracts were to terminate because the property could no longer be used as Section 8 housing, then I think that something very similar to what happened here would happen, which is that any funds that were not being used, excess funds, would revert back to HUD for use for the Section 8 program. And what regulation or contract requires that? And the thing that most puzzled me about the regulations that the parties have pointed us to is that they all deal with how the money is used while the project is going on. There doesn't seem to be a regulation providing what happens at the end. And we're now at the end. Well, if there's no regulation about what happens at the end, one would think the money goes back to whoever kicked it in. And New West says, we kicked it in. It was part of our subsidized rent, which we had to hold in reserve. And if that's true, and there's no regulation saying, well, it actually belongs to HUD, then, well, you see the problem. I do, Your Honor, and that's incorrect that this was HUD's money to begin with. Or, sorry, that it was New West money to begin with. So it's helpful to take a step back. Is New West correct to say that it was a portion of the contractual rent subsidy? That is certainly correct, Your Honor. Right. It's not a kicker on top of the rent subsidy. It was a portion of the rent subsidy. Well, both, Your Honor, actually. I don't know if we want to get into the finer details here. We might have to. If I could just take a quick step back. So the basic principle of Section 8 is that it is a public-private partnership. And in return for HUD putting up the vast majority of funding for a project, owners agree to take what are called limited distributions. And that is to say that they are sharply curtailed in their ability to take money out of the project as profit or as an asset. So you can find that throughout the various contracts. You can find that most clearly. I'm aware of that. But, of course, one of the things that this fund can be used for is to pay down the mortgage. And that is a direct benefit to the project owner. That implies that it's actually the project owner's money, does it not? No, Your Honor, because that is, again, under the applicable regulation. That is an express thing for which project funds can be used. Whose money is it, if not New West's? It's project fund money. I mean, it is a segregated. So New West, as with all of these entities, is a single ownership entity. And all of the applicable contracts and regulations require all funds involving this entity to be in segregated accounts. Right, but who owns the fund? You have to have an answer. I mean, our position is that it is our money. It's the government's money. That is correct, Your Honor. Then how is the security interest explained? You're taking a security interest in your own money? As we said in our brief, that is simply because it is one of many sources of money which we could use if there were a default and there was an intent to avoid any future wrangling. No, I wish you'd answer my colleague's question. Why does the government need a security interest in its own funds? The Treasury doesn't take a security interest in Treasury funds. It's incoherent. I admit, Your Honor, that it is not the most elegant way of putting it. It's not a matter of elegance. It's a matter of legal form. And we care about those things. Of course, Your Honor. But our position is that it is included on a list of things that could function to act as collateral. But HUD's position is that it is its money, ultimately. And the excess funds provision of the regulation— So several things, Your Honor. I mean, the only answer to the security interest is just that it was poorly phrased. Your Honor, it was used to avoid any future wrangling, as this case shows, can happen as to whether you could apply this money in the event of a default, or instead the project owner were to come in and say, no, you can't take this money and use it to cover missed mortgage payments. But there's a number of things. So the general principle at 880-601 is that project funds must be used for the benefit of the project. And then 801-205, which, again, is crucial to this case and is reiterated throughout the contracts, is that there can be no distributions. And distributions are defined as any withdrawal or taking of cash or any assets of the project, excluding payment for reasonable expenses, without going through the rules for distribution. And New West has never done that. There is caps on how much money people can take out of these. Two very brief points. That's during the project, though. And at the end of the project, all of the excess funds go back to HUD. That is, all the funds that have not been earmarked for one of the allowable purposes. Well, that's your position. I understand that. But I want to back up and just ask you a question about the district court's authority to resolve this issue. HUD changed its position. Earlier in the litigation, you took the position, as I understand it, that this was not before the court in the condemnation action, that it was a matter that was controlled by the Section 8 contracts between you and New West. But then you came in. You're coming in now as an amicus and saying that, no, no, no. In fact, this was properly part of our settlement agreement, and the court had the authority to order the transfer of the funds. That's not quite right, Your Honor. We don't contend that the district court could have independently decided where the funds went. What we read the district court's opinion as having done is having rejected New West's attempt to take these funds. So the posture in which this first came up, other than the settlement agreement, which we are not saying required the district court to do anything, and we've never said that, is that when HUD tried to withdraw money from the valuation in order to pay down its mortgage, New West objected to that and said, HUD can take money, but it has to give us a credit for these reserves because we consider these reserves to be our money and we are owed compensation for them. And the district court twice rejected that contention in two different orders and then again addressed it in its vesting order when the city asked for vesting of the property. The city moved to take it, and then the district court ruled on that. So whatever happened before isn't what the district court was responding to. I'm not sure that's right. Some of those orders actually came at the actual order. So the docket numbers on that, Your Honor, are 1332 and 1341 are the two objections to that. And the vesting order also reaffirms that, and it does, as you know, go on to say that the reserves should be transferred. Yeah. But we read that ultimately as just being a recognition that the reserves should go where HUD wants them to go. But that's not what it says. If this court were to read that language as an actual order, we would think that the district court, to the extent that it ordered them to have been to go to a particular place other than to do what HUD wanted them to do, that it would have exceeded its power to do that by that point. But it would certainly reject New West's attempt to seize this money. There should be no question about that. If Your Honor would allow me. Thank you. Thank you, Mr. Walter. Mr. Buck. Good morning, Your Honor. May it please the court. Counsel, is it your position that the district court ordered the transfer of the money to you? It is the city's position that the order vesting title, which I think is what you're referring to at the end, was an order that recognized the settlement agreement that was entered into between HUD and Joliet, and pursuant to the order vesting title, after the condemnation had taken place, directed the parties to follow the settlement agreement that had been previously entered into. So as part of that settlement agreement, with respect to the reserve funds, those reserve funds were required to be transferred to Joliet. That's what the court was doing. Who was required? The actual last line says, Defendants shall deposit the reserves in an account or accounts designated by Joliet for the benefit of the properties, as determined by HUD. HUD. HUD is no longer a defendant, but it's the one that holds the funds. So who is the target of this order? Who has been ordered by the district judge to do anything? Certainly HUD and Joliet. HUD can't be ordered. It's no longer a party. You can't issue orders to a non-party. That's pretty fundamental. It can't be Joliet because Joliet doesn't have the money. Who has been ordered to do something? Judge, I believe that pursuant to the settlement agreement, which the court retained jurisdiction over the parties for the purpose of addressing that, I think that that was, whether it was correct or incorrect, I understand your dilemma. I believe it was directed to HUD and Joliet. Pursuant to the, and this is where I think there's a little bit of confusion. There's a reason why HUD is an amicus curiae now. It's been dismissed as a party. Yes, sir. This is not something covered by the settlement agreement. The district court didn't purport to be enforcing a settlement agreement. District court purported to order the defendants, you, not HUD. I take it that Mid-City National Bank of Chicago has long been dismissed. The only person who is a defendant who could be ordered is the city of Joliet, which doesn't have any money. It's weird. I think that the, to answer, I'm trying to answer your question, and I believe in answering your question, the purpose of the court's order in, with respect to the court's order. I'm not interested in the purpose of the order. I'm interested in what the court ordered. It ordered the defendants to do something, which so far as I can see the defendants cannot possibly do. And if you're referring to the defendants as New West, I would agree with you that they couldn't do that because under the HAP contracts that was not property which was subject to being condemned. And if I can try to answer your question about what happens if there's a fire, Joliet now has the property. Joliet is operating the property as a Section 8 housing development pursuant to HUD regulations. And under HUD regulations you have two things going on. You would have a HUD mortgage, which New West had, but New West also had Section 8 or Housing Assistance Program contracts. Those were the contracts, leases if you will, that essentially provided New West with the income source through rent subsidies through the Housing and Urban Development, okay? Joliet has now taken that over. As Joliet sits today as the owner of the project under those Section 8 Housing Assistance Program contracts, if the project burned, Joliet would not be entitled to receive rent subsidies under the Section 8 contracts because it could not fulfill the obligation of providing housing. Therefore, the contracts would terminate. And pursuant to 24 CFR Section 881.205E, it says, upon termination of the Housing Assistance contracts, any excess funds must be remitted to HUD. So in the event of a fire, when there's no project, meaning that we cannot provide housing, there's no subsidy contracts, the Section 8 housing contracts end, when they end, any reserve fund is remitted to HUD. HUD takes that money. Now then HUD can decide, do they want to rebuild the project? Do they want to use it to provide further assistance to rents? They have the discretion to do that. So that's what I would suggest to you happens now for Joliet as the owner of the property. That's why HUD owns the money. Because when that contract is terminated, and upon the condemnation of the property, New West could not provide housing under Evergreen I and Evergreen II because their right to do that had been terminated. Their Section 8 Housing Assistance Program contracts, excuse me, terminated the reserve fund that they had, which they could have drawn down in the time. They could have applied for application to draw down on it. And had they achieved full reserve fund payment, they would have been entitled to receive up to a 20% distribution for that. So that gets to your question about security interest. Why take a security interest in money that's yours? Because in the future, had New West paid the full amount of the reserve fund, they would have been entitled to receive money back on that. And so HUD was properly taking a security interest in money that could have been in the future, New West, had they applied for it and had it been approved. Are you not raising this project anymore? We're not, no. It's going on in operation. There's an initial term of the agreement between, and that was part of the settlement agreement, because if you go back in the litigation when Joliet filed the condemnation, HUD came in as a party to that and objected to the condemnation. And pursuant to the settlement agreement, HUD and Joliet worked out an operation for Joliet to continue with the operation of Evergreen I and Evergreen II as a subsidized housing assistance program. And it's important to understand that with reserve... I thought the current plan was that half was being torn down now and maybe the other half later, but now seems to be receding into the future. Yes, sir, that's true. And so the operation of the reserves, and Joliet's kind of on the back end, right? So the first part of this story begins with New West and their agreements with HUD. HUD is in the middle then between New West and Joliet, and now Joliet has the project. When HUD took the reserves and used the reserves, pursuant to their regulations, they then applied the reserves as operational costs to continue the subsidized housing during the period of transition from New West to Joliet as operational costs. And they had a right to do that under the regulations. Do you think there is a conflict between the regulation and the subsidy contract? New West says the contract plainly entitles it to the money once the mortgage has been repaid, as it has been. On your reading of the regulation, once the mortgage is repaid, then HUD gets the money. These two statements can't both be true. You're right if there's no... Look, I am not right or wrong. I am asking how these two statements, New West's lawyer and yours, can be true at the same time. New West is ignoring that they had housing assistance program contracts, that they were under the Section 8 umbrella. And because they were under the Section 8 umbrella, those reserve funds were under another separate set of guidelines. So like in one of the cases that was cited by New West, the cookie case... So your view is that the regulations simply override the contract? The regulations are part of the contract. They're referenced in the contract. No, the regulations are not part of the contract. That's metaphysics. There are contracts between the parties and HUD, and then there are regulations. Regulations are promulgated under the Administrative Procedure Act. They aren't created by contract. We should be capable of talking in the same vocabulary. The regulations for the housing assistance program contracts, the Section 8 contracts, they control. And if you have a mortgage through HUD, you have to also consider if you have Section 8 housing contracts, what your obligations are under that. So while you might be entitled to receive the reserve under the loan, you may not be able to receive it under your Section 8 housing contracts if you don't fulfill the terms of that. So, counsel, if the project is originally conceived in the condemnation proceeding where the buildings were going to be raised, you wouldn't have tried to get this money. It's because the terms changed, and now you've agreed in the settlement agreement to operate them, at least in the interim, that you're claiming the money. Otherwise your position is it would have just stayed with HUD? Yeah, HUD would have taken that money, and that money would have never been put into the reserve fund. HUD still controls the money. It's not Joliet's money. HUD still uses the money to manage the program, the project, excuse me. So if Joliet was going to raise it, and it wasn't going to be continued on in operation, to answer your question, yes, HUD would have been able to acquire that reserve fund if they chose to, and then apply that to other housing assistance programs. Are you making additions to the reserve funds as they're being depleted? Yes, we're required to, yes. And do you own those? No, we don't. So that's HUD's money? Correct. Even though you're paying into the reserve fund? We're paying into the reserve fund based on the subsidies that we receive from HUD, so that is not Joliet's money. Okay, counsel, thank you very much. The case is taken under advisement. Your time has expired, Mr. Teslav.